Emily L. Wallerstein (State Bar # 260729)
emily.wallerstein@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California  90071
Telephone:  +1 213 624 2500
Facsimile:   +1 213 623 4581

Steven A. Friedman (OH Bar #0060001) (*pro hac vice application pending*)
steven.friedman@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, OH 44114
Telephone:  +1 216 479 8500
Facsimile:   +1 216 479 8780

Attorneys for Plaintiffs
VIRTUAL REALTY ENTERPRISES, L.L.C.
and VRE SPANISH SPRINGS, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VIRTUAL REALTY ENTERPRISES, L.L.C., a Missouri Limited Liability Company,<br><br>VRE SPANISH SPRINGS, L.L.C., a Missouri Limited Liability Company,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN LUIS OBISPO, a political subdivision of the State of California,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMPLAINT FOR
DECLARATORY JUDGMENT

1  Plaintiffs Virtual Realty Enterprises, L.L.C. and VRE Spanish Springs,
2  L.L.C. (collectively "VRE"), for their Complaint herein, alleges as follows:

### PARTIES, VENUE AND JURISDICTION

1. Plaintiffs Virtual Realty Enterprises, L.L.C. and VRE Spanish Springs, L.L.C. are both limited liability companies organized and existing under the laws of Missouri, with a principal place of business at 100 South Brentwood Boulevard, Suite 240, Saint Louis, Missouri, 63105. Both plaintiffs are licensed to do business, and do business, in the State of California and within the County of San Luis Obispo.

2. Defendant County of San Luis Obispo (the "County") is a general law county, and a political subdivision of the State of California.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among VRE and the County, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court further has jurisdiction to consider this declaratory judgment complaint pursuant to 28 U.S.C. § 2201.

4. This Court has personal jurisdiction over the County because it is a political subdivision of the State of California and continuously engages in substantial activities in and directed to this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the County is a political subdivision of the State of California that resides in this district.

### GENERAL ALLEGATIONS

6. This action arises out of the County's failure to properly use $5,000,000 it obtained from a Performance Bond in accordance with the County's public representations and commitments – i.e. for the express purpose of completing certain improvements to real property located in the County of San Luis Obispo, California, commonly known as Assessor's Parcel Numbers 079-281-009

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

through 079-281-024 and 079-281-027 (collectively the "Property" or "Tract 2388").

7. Prior to 2005, the former owner of Tract 2388, Spanish Springs LLC ("Spanish Springs"), sought to develop a residential community on the Property pursuant to *California's Subdivision Map Act* (Government Code §§ 66410-66499.37).

8. Spanish Springs submitted an application to the County in order to proceed with this development of the Property, including the subdivision of the Property into separate parcels. As a condition of the County's approval of the subdivision of the Property into separate parcels to be developed into residential lots as shown in a final tract map under the *Subdivision Map Act*, the County required Spanish Springs to construct certain improvements, including the construction of certain roads and sewers, to the Property and dedicate the improvements to the County upon the County's acceptance thereof.

9. Accordingly, on February 7, 2005, Spanish Springs and the County entered into a Subdivision Agreement (the "Subdivision Agreement"). Under the Subdivision Agreement, the County agreed, pursuant to the California *Subdivision Map Act,* to allow the Property to be subdivided into sixteen individual lots for residential development. In exchange, Spanish Springs was required to complete the improvements to the Property on or before February 7, 2006. A true and correct copy of the Subdivision Agreement is attached hereto as **Exhibit A**.

10. The Subdivision Agreement required Spanish Springs to secure its performance of the completion of the improvements to the Property with a Performance Bond in the amount of $7,406,800 (the "Performance Bond").

11. Spanish Springs obtained the required bond from Insurance Company of the West ("ICW"). A true and correct copy of the Performance Bond issued by ICW is attached hereto as **Exhibit B**.

COMPLAINT FOR DECLARATORY JUDGMENT

12. The Subdivision Agreement expressly provides "[i]f said improvement work is not completed on or before said date, the Subdivider [Spanish Springs] agrees that the County may elect to complete the same." (Subdivision Agreement, ¶ 4).

13. The Subdivision Agreement also expressly provides that the County may make a claim on the Performance Bond <u>only</u> if County elects to complete the work and <u>only</u> for the express purpose of completing the improvements under the Subdivision Agreement in the event of Spanish Springs' default:

> *If the County shall elect to complete said work or improvement, then and in that event,* [Spanish Springs] agrees that *the County may at its option declare the bond or deposit, as hereinafter described, forfeited and utilize the proceeds, including any interest, to complete said improvements* or that the County may complete said improvements and recover the full cost and expense thereof including reasonable attorney fees from [Spanish Springs] and his surety.

(Subdivision Agreement, ¶ 5 [Emphasis added].)

14. Thus, the express purpose of the Performance Bond solely was to provide funds for the completion of the improvements to the Property should the County elect to complete the improvements if Spanish Springs failed to do so.

15. At its June 14, 2005 public meeting, pursuant to the Subdivision Agreement, the San Luis Obispo County Board of Supervisors (the "Board") voted on and approved the Subdivision contemplated therein. Accordingly, the County, acting through its Board, publicly represented and committed to use any proceeds from the Performance Bond in accordance with the Subdivision Agreement, i.e. "to complete said work or improvement" to the Property. A true and correct copy of the June 14, 2015 meeting minutes of the San Luis Obispo County Board of Supervisors is attached hereto as **Exhibit C**.

16. On or about June 23, 2005, the Subdivision Agreement, along with the final map of Tract 2388, as approved by the County Board of Supervisors, was recorded as Instrument No. 2005-05-1020 with the County's land records.

COMPLAINT FOR DECLARATORY JUDGMENT

17. In reliance on the County's public representations in the Subdivision Agreement, including that the County would utilize the Performance Bond only as contemplated in the Subdivision Agreement, on April 6, 2006, VRE entered into a Loan Agreement with Spanish Springs pursuant to which VRE lent the principal sum of $13,250,000 for the development of the Property. VRE's loan was secured by a first Deed of Trust recorded against the Property.

18. Spanish Springs failed to complete the improvements to the Property under its Subdivision Agreement with the County. The County never elected to terminate Subdivision Agreement.

19. Spanish Springs ultimately defaulted on its loan obligations to VRE. VRE foreclosed on its first Deed of Trust. On or about November 8, 2011, as part of a foreclosure action, VRE obtained title to the property through a Trustee's Deed Upon Sale. A copy of the Trustee's Deed of Sale is attached hereto as **Exhibit D**. VRE subsequently transferred the Property to VRE Spanish Springs, L.L.C., a special purpose entity it created to hold title to the Property.

20. On January 15, 2015, the County sent a demand letter to Spanish Springs and ICW, and made a claim on the Performance Bond:

> The date for completing the public improvements ("Improvements") required by the Subdivision Agreement expired on February 7, 2012. No work on the Improvements has been completed. . . . Accordingly, demand is hereby made upon Insurance Company of the West, as surety, to immediately pay to the County of San Luis Obispo, the penal sum of Bond No. 2137793 in the amount of $7,406,800.00 or confirm Insurance Company of the West shall complete the Improvements.

A true and correct copy of the County's January 15, 2015 demand letter is attached hereto as **Exhibit E**.

21. After the County's demand letter, ICW contacted VRE and entered into negotiations over the use of the Performance Bond for the purpose of completing the improvements to Tract 2388 as provided in the Subdivision Agreement.

22. Upon information and belief, the County was aware of the negotiations between ICW and VRE regarding the use of the Performance Bond for purposes of completing the improvements to Tract 2388 as provided in the Subdivision Agreement. However, VRE was not aware that the County and ICW also were in negotiations during this time.

23. On November 4, 2015, without prior notice to VRE, ICW and the County entered into a Settlement Agreement pursuant to which ICW paid the County $5,000,000 ("the Performance Bond Funds"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit F**.

24. However, instead of utilizing the Performance Bond Funds to complete the improvements under the Subdivision Agreement, the County has deposited the Performance Bond Funds into its General Fund and refuses to use them for the improvements to Tract 2388.

25. VRE has made multiple demands on the County that it utilize the Performance Bond Funds in accordance with its public and irrevocable representations under the terms of the Subdivision Agreement. However, the County has refused to do so, contending that it is not obligated to use the Performance Bond Funds in any particular manner, even though it was only entitled to make a claim for the Performance Bond Funds "[i]f the County shall elect to complete said work or improvement."

26. Accordingly, an actual case or controversy has arisen between the parties. While VRE contends that the County is equitably estopped from using the Performance Bond Funds for any purpose other than that specified in the Subdivision Agreement, the County has refused to use the funds to complete the improvements contemplated under the Subdivision Agreement. The County's conduct has caused and continues to cause injury to VRE, most notably the failure to utilize the Performance Bond Funds to complete the improvements described in the Subdivision Agreement.

COMPLAINT FOR DECLARATORY JUDGMENT

# CLAIM FOR RELIEF

## (Declaratory Judgment of Equitable Estoppel)

27. VRE incorporates by reference the allegations in paragraphs 1 through 17 above as though fully set forth herein.

28. In entering into the Subdivision Agreement, the County was aware that the Agreement allowed it to make a claim on the Performance Bond only if it elected to complete the improvements to the Property.

29. When the Subdivision Agreement was approved by the County Board of Supervisors, the County, acting through its Board, represented its commitment to abide by the terms of the Subdivision Agreement in its entirety, upon which the public, including VRE, could rely. Moreover, as a result of the County's conduct, VRE was entitled to believe, and did believe, that the County would act in conformity with its public commitment to honor the terms of the Subdivision Agreement, and only make claim on the Performance Bond if the County elected to complete the improvements.

30. VRE reasonably relied on the County's public representations that it would abide by the terms of the Subdivision Agreement when it entered into its lending relationship with Spanish Springs. VRE was unaware that the County would subsequently refuse to abide by its public commitment to utilize the Performance Bond Funds only to complete the improvements to the Property.

31. VRE has suffered a considerable loss on its loan to Spanish Springs.

32. There is no public policy that justifies the County's conduct. Furthermore, the County's conduct has caused, and continues to cause, substantial injury to VRE.

33. The County has been unjustly enriched by its refusal to utilize the Performance Bond Funds for the sole and express purpose stated in the Subdivision Agreement, i.e. for the improvements to Tract 2388.

COMPLAINT FOR DECLARATORY JUDGMENT

34. VRE cannot comply with the *California Subdivision Map Act* and develop and sell lots on the Property unless the improvements described in the Subdivision Agreement, as approved by the County Board of Supervisors and recorded with the County's land records, are completed.

35. Accordingly, VRE seeks a declaratory judgment from this Court that the County is equitably estopped from using the Performance Bond Funds for any purpose other than completing the improvements in accordance with the Subdivision Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, VRE respectfully requests that the Court:

1. Find and declare that the County may not utilize the Performance Bond Funds for any purpose other than completing the improvements in accordance with the Subdivision Agreement; and

2. Enter such other and further relief to which VRE may be entitled as a matter of law or equity, or which the Court deems to be just and proper.

Dated: February 3, 2016         SQUIRE PATTON BOGGS (US) LLP


                                By: */s/ Emily L. Wallerstein*
                                    Emily L. Wallerstein
                                Attorneys for Plaintiffs VIRTUAL
                                REALTY ENTERPRISES, L.L.C. and
                                VRE SPANISH SPRINGS, L.L.C.

010-8173-7129/2
062503.00005

- 9 -

COMPLAINT FOR
DECLARATORY JUDGMENT